USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/6/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
    DAMON ASH,

                          Plaintiff,

                -against-                   1:16-cv-9548-GHW

    CITY OF NEW YORK, LIEUTENANT       MEMORANDUM OPINION AND
    LEAHY, OFFICER McKENZIE, BETTY                ORDER
    JACOBSON, SERGEANT LEE, LAURA
    PORSCHAR, and NORMA KLEIN

                          Defendants.
-------------------------------------------------------------- X

GREGORY H. WOODS, United States District Judge:

       Plaintiff Damon Ash brings this action *pro se*, alleging numerous violations of his statutory and constitutional rights. Most of Mr. Ash's claims relate to two incidents, the first of which he alleges occurred on May 16, 2013 and the second of which he alleges occurred on January 26, 2015. Because the dates of these incidents are apparent from the face of Mr. Ash's complaint, the Court dismisses these claims as time barred by the applicable three-year statute of limitations. Because Mr. Ash is proceeding *pro se*, the Court has also construed his complaint to raise claims for failure to investigate reports that he allegedly attempted to file with Lt. Leahy and other New York police officers, for religious discrimination, and for defamation. Because failure to investigate is not cognizable under federal law and Mr. Ash's religious discrimination and defamation claims are supported only by conclusory assertions, those claims are likewise dismissed. Accordingly, Defendants' motion to dismiss is GRANTED.

## I. BACKGROUND

### A. Facts[1]

The FAC alleges that on May 16, 2013 Mr. Ash and his cousin were sitting a park when the men were approached by Defendant Lieutenant Leahy and another officer. FAC at 4. Lt. Leahy issued a citation to Mr. Ash and his cousin "for drinking" from an open container of alcohol. *Id.* The FAC alleges that the open container belonged to Mr. Ash's cousin, and that Mr. Ash informed Lt. Leahy of that fact. *Id.* Lt. Leahy or his partner then ran a search for Mr. Ash in a law enforcement database. *See id.*; Opposition to Motion to Dismiss ("Opp."), Dkt No. 94, at 3 ("This means that [Lt.] Leahy had no probable cause to question me[,] search me[,] or run my I.D. through a data base to see if I had any warrants."). The officers discovered that Mr. Ash had a warrant out for his arrest. FAC at 4. The FAC does not contest the validity of the warrant but suggests that it was for an insignificant offense because it was for a minor misdemeanor, was dated twenty years before the arrest, and was a "no extra[dition]" warrant. *Id.* Lt. Leahy's partner then arrested Mr. Ash. FAC at 4 ("Lt[.] Leahy had the officer arrest me.").

Mr. Ash alleges that he was then held in jail for "20 to 30 days without seeing a judge or being [arraigned.]" *Id.* He then allegedly received a "pink slip" from a corrections officer and was released. *Id.*

The FAC also raises a separate incident in which Mr. Ash claims that his rights were violated. Mr. Ash alleges that his apartment door was "kicked in by the 7th Precinct[,]" including Defendant Sergeant Lee and other officers on June 26, 2015. FAC at 4. Mr. Ash alleges that he was strapped into an ambulance and taken to a mental hospital, allegedly as part of a conspiracy between

---

[1] The facts are drawn from Mr. Ash's Third Amended Complaint ("TAC"), Dkt No. 75, and his Fourth Amended Complaint ("FAC"), Dkt No. 84, and are accepted as true for the purposes of this motion to dismiss. *See, e.g., Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). However, "[t]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

the police and his landlord to have him removed from his building. TAC at 4; *see also* FAC at 4 (alleging that Mr. Ash was "kidnapped against [his] will"). Mr. Ash alleges that he saw Defendant Laura Porschar—allegedly an employee of his landlords, who Mr. Ash appears to allege are Defendants Betty Jacobson and Norma Klein—speaking with Sgt. Lee and that "they both colluded to pretend that she was [his] doctor" so that they could convince medical professionals to take him to a mental hospital against his will. TAC at 4; *see also* FAC at 4 (alleging that Sgt. Lee "col[l]uded to assist [Defendant] Laura Pors[c]har" to have him "illegally committed" to "Bellevue Mental Ward"). Mr. Ash alleges that he spoke with an "ex[-employee of his] landlord" who gave him the details behind the alleged scheme between his landlord and the police. TAC at 4.

In the TAC, Mr. Ash alleges that when he returned home, he found that his home had been "destroyed" and many of his possessions had been stolen. *Id.* Mr. Ash alleges that he attempted to file a police report but that "under the request of Lt[.] Leahy[,] no one at the 7th precinct was to take any reports or complaints . . . pertaining to" Mr. Ash's address. *Id.* at 5. Elsewhere in his complaint, Mr. Ash alleges causes of action for "abuse of power, illegally searching [his apartment] without [a] warrant, kick[ing] in [his] door [and] causing dama[]ge to property without merit, warrant, or criminal charge . . . [c]ausing emotional and physical stress . . . [t]hreats, harassment and refus[ing] to protect, serve or take reports on [his] behalf" over an unspecified four year period. TAC at 6. He also alleges "def[a]mation of character through religious belief." *Id.*

**B. Procedural History**

"On December 9, 2016, Ash filed his initial complaint in this action, naming the City of New York as the sole Defendant." *Ash v. City of New York* ("*Ash I*"), 16-CV-9548(RJS), 2018 WL 3462514, at *1 (S.D.N.Y. July 18, 2018) (Sullivan, J.). Mr. Ash subsequently filed the Second Amended Complaint ("SAC"), Dkt No. 8, identifying as defendants 'Lieutenant Leary,' 'Officer McKenzie' with shield number 942888, and two John Doe detectives." *Id.* at *2. The defendants

3

filed a motion to dismiss the amended complaint. *See id.*

In *Ash I*, the Court dismissed most of Mr. Ash's claims as alleged. The Court dismissed Mr. Ash's claim that "Defendant McKenzie 'falsely arrested' him 'for assault' on April 22, 2015" because the allegations undergirding that claim were "wholly conclusory and therefore cannot support a false arrest claim." *Id.* at *3. The Court dismissed Mr. Ash's unlawful entry claim because the second amended complaint ("SAC") "fail[ed] to identify which Defendants, if any, participated in the alleged unlawful entry." *Id.* The Court also dismissed Mr. Ash's defamation claim. *Id.* The basis for this claim was that "Defendant McKenzie defamed him by recording his first name as 'Demon' (instead of 'Damon') on an arrest record." *Id.* Because "no reasonable reader could have interpreted the misnomer as a statement of 'objective fact,'" as required to support a defamation claim, the Court dismissed Mr. Ash's defamation claim. *Id.* Finally, the Court dismissed Mr. Ash's claim against the City of New York because the SAC did not allege "the required causal connection between his alleged injuries and any official policy of the City of New York." *Id.* at *4 (citation omitted).

The Court declined to dismiss the false arrest claim against Defendant Leahy, however. Defendants argued that the claimed was time-barred "because the City's arrest records show that Ash was arrested for an open-container violation on May 16, 2013, and that Ash did not file his original complaint in this action until December 2016, after the three-year statute of limitations had expired." *Id.* at *2 (citation omitted). "If accurate," the Court noted "this chronology would surely justify dismissal of this false arrest claim with prejudice." *Id.* However, "the Court decline[d] to dismiss the false arrest claim against Defendant Leahy at this stage of the proceedings . . . [b]ecause it is not clear from the face of the Complaint that the alleged open-container arrest falls outside of the applicable limitations period." *Id.* Thus, the Court dismissed all of Mr. Ash's claims in the SAC "except for his first false arrest claim against Defendant Leahy." *Id.* at *4. The Court did not

4

specify whether it was granting Mr. Ash leave to replead the claims that it had dismissed.

After the Court issued its decision in *Ash I*, Defendants answered the complaint. Dkt No. 55. By letter dated August 14, 2018, Mr. Ash requested leave to amend his complaint. Dkt No. 60. The Court granted Mr. Ash leave to amend on September 12, 2018. Dkt No. 64. On October 29, 2018, the case was reassigned to this Court's docket because Judge Sullivan was elevated to the Second Circuit. Mr. Ash filed the TAC on December 21, 2018. Dkt No. 75. Construed liberally, the TAC raises claims for unlawful entry in violation of the Fourth Amendment, damage to personal property, intentional and/or negligent infliction of emotional distress, defamation of character, and failure to investigate. *Id.*

The TAC named "Sergeant Vasquez" as the officer who had illegally entered his home. In letters dated December 29, 2018 and January 10, 2019, Mr. Ash again sought leave to amend because he had learned that Sergeant Vazquez had been transferred out of the 7th Precinct before January 26, 2015, the date the alleged unlawful entry occurred. However, Defendants represented that another police officer—Defendant Sergeant Lee—responded to a complaint at Mr. Ash's address. Dkt Nos. 78, 80. In his December 29, 2018 letter, Mr. Ash also sought leave to amend to add Defendants Jacobson and Klein. On January 16, 2019, the Court granted Mr. Ash leave to amend "only with respect to: (i) the addition of the two parties that Mr. Ash identifies in his letter dated December 29, 2018 and any claims he intends to assert against them and (ii) the substitution of Sergeant Lee for Sergeant Vasquez in the allegations surrounding the January 26, 2015 incident as described in the third amended complaint." Dkt No. 81 at 2. In the same order, the Court "remind[ed] Mr. Ash that an amended complaint replaces a previous complaint" and that "if Mr. Ash's forthcoming fourth amended complaint fails to include his false arrest claim against Lieutenant Leahy as well as the claims asserted in the third amended complaint, these claims will no longer be before the Court." *Id.*

Mr. Ash filed the FAC on February 6, 2019. Dkt No. 84. Construed liberally, the FAC raises a claim for false arrest. *Id.* at 4. The FAC also alleges that Mr. Ash was not timely arraigned after he was arrested. *Id.* On March 15, 2019, Defendants Leahy, Lee, and the City of New York (the "City Defendants") filed a motion to dismiss with an accompanying memorandum of law and declaration in support of the motion. Dkt Nos. 90-92. Mr. Ash filed his opposition on February 28, 2019. Dkt No. 94. The City Defendants filed a reply memorandum of law and supporting declaration on April 18, 2019. Dkt Nos. 100-101.[2]

## II. LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, a defendant may move to dismiss a plaintiff's claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a motion to dismiss under Rule 12(b)(6), the Court must "accept[] all factual allegations [in the complaint] as true and draw[] all reasonable inferences in the plaintiff's favor." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 110-11 (2d Cir. 2010) (quoting *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009)). To avoid dismissal, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A formulaic recitation of the elements of a cause of action, devoid of supporting facts, does not suffice. *Id.* To satisfy the "plausibility" requirement, the plaintiff must plead facts that permit the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

---

[2] On June 14, 2019, Defendants Jacobson and Porschar filed a letter requesting leave to "join in and adopt the arguments of co-defendants *nunc pro tunc* as they relate to the expiration of the applicable statute of limitations concerning the alleged occurrence of January 26, 2015." Dkt No. 116 at 1. The Court granted that request on June 14, 2019. Dkt No. 117.

6

Because Mr. Ash is proceeding *pro se*, the Court must liberally construe his allegations and "interpret[] [them] to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (quotation omitted); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed[.]" (quotation omitted)); *Nielsen v. Rabin*, 746 F.3d 58, 63 (2d Cir. 2014) ("Where . . . the complaint was filed *pro se*, it must be construed liberally to raise the strongest arguments it suggests." (quotation omitted)). Courts must afford *pro se* plaintiffs "special solicitude" before granting motions to dismiss. *Ruotolo v. I.R.S.*, 28 F.3d 6, 8 (2d Cir 1994). Nevertheless, "dismissal of a *pro se* complaint is . . . appropriate where a plaintiff has clearly failed to meet the minimum pleading requirements." *Rahman v. Schriro*, 22 F. Supp. 3d 305, 310 (S.D.N.Y. 2014) (citing *Rodriguez v. Weprin*, 116 F.3d 62, 65 (2d Cir. 1997)).

When ruling on a motion to dismiss, "a court may consider only the complaint, any written instrument attached to the complaint as an exhibit, any statements or documents incorporated in it by reference, and any document upon which the complaint heavily relies." *In re Thelen LLP*, 736 F.3d 213, 219 (2d Cir. 2013). In deciding this motion, the Court considered the "After Care Letter" issued by the New York City Correctional Health Services Division of Health Care Access and Improvement that is attached to Mr. Ash's Opposition. For a document to be integral to a complaint, "the plaintiff must have (1) 'actual notice' of the extraneous information and (2) 'relied upon th[e] documents in framing the complaint.'" *DeLuca v. AccessIT Group, Inc.*, 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010) (quoting *Chambers*, 282 F.3d at 153). Mr. Ash had notice of this letter and has relied on it, as it is attached to this complaint. While the Court must accept the facts as alleged in the complaint, "[w]hen allegations contained within the complaint are contradicted by documents attached to the complaint, the documents control, and the Court need not accept the allegations contained within the complaint as true." *Rozsa v. May Davis Grp., Inc.*, 187 F. Supp. 2d 123, 128 (S.D.N.Y. 2002).

7

The Court has also considered Mr. Ash's allegations in the TAC in deciding this motion. "It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect." *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) (citations omitted). Therefore, the Court need only consider the FAC for purposes of this motion to dismiss. However, courts in this Circuit have exercised their discretion to consider allegations in prior iterations of *pro se* plaintiffs' complaints. *See Austin v. Ford Models, Inc.*, 149 F.3d 148, 155-56 (2d Cir. 1998), *abrogated on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002); *see also Elliott v. City of Hartford*, 649 F. App'x 31, 32 (2d Cir. 2016); *Lewis v. Weiss*, No. 12-CV-07242 (ALC), 2016 WL 1718251, at *3 (S.D.N.Y. Apr. 27, 2016). This exercise of discretion is consistent with the principle that courts must afford "special solicitude" to *pro se* litigants before granting a motion to dismiss. *Ruotolo*, 28 F.3d at 8. Moreover, in the FAC, Mr. Ash appears to describe the FAC as an "add on" to the TAC. FAC at 5. Hence, in keeping with the principle that "[a] document filed *pro se* is to be liberally construed," *Erickson*, 551 U.S. at 94, the Court has construed Mr. Ash's FAC to incorporate the allegations made in the TAC.

The Court has also considered factual allegations raised in Mr. Ash's opposition to the motion to dismiss. "[A]llegations made in a *pro se* plaintiff's memorandum of law, where they are consistent with those in the complaint, may also be considered on a motion to dismiss." *Braxton v. Nichols*, No. 08 Civ. 8568, 2010 WL 1010001, at *1 (S.D.N.Y. Mar. 18, 2010); *see also Rosado v. Herard*, No. 12 Civ. 8943, 2013 WL 6170631, at *3 (S.D.N.Y. Nov. 25, 2013) (citation omitted). Further, to the extent claims alleged for the first time in motion papers could have been asserted based on the facts alleged in the complaint, the Court has considered them. *See Finch v. New York*, No. 10 Civ. 9691, 2012 WL 2866253 (S.D.N.Y. May 30, 2012) (finding that while "a plaintiff cannot amend her complaint through an opposition to a motion to dismiss," the court "should read the facts alleged in a *pro se* plaintiff's complaint for whatever claims may properly be based on such facts"). However,

8

"[w]here a plaintiff's motion papers assert entirely new claims that do not arise out of the facts alleged in the complaint, the court need not consider them." *Vlad-Berindan v. MTA New York City Transit*, 14-CV-675 RJS, 2014 WL 6982929, at *6 (S.D.N.Y. Dec. 10, 2014) (Sullivan, J.) (citing *Bernstein v. City of New York*, No. 06 Civ. 895, 2007 WL 1573910, at *10 (S.D.N.Y. May 24, 2007)). Therefore, the Court considers the facts alleged in Mr. Ash's opposition.

The Court has construed the TAC and FAC as raising federal claims under 42 U.S.C. § 1983 ("Section 1983") for false arrest and failure to arraign him in a timely fashion with respect to the May 16, 2013 incident. The Court has also construed Mr. Ash's complaints as raising claims under Section 1983 for unlawful entry, damage to personal property, and religious discrimination, and defamation of character with respect to the January 26, 2015 incident.[3] The Court also construes Mr. Ash's complaints as raising claims under Section 1983 for failure to investigate, for religious discrimination, and for defamation.

## III. DISCUSSION

### A. Statute of Limitations

Defendants move to dismiss all claims against them because, Defendants argue, they are barred by the statute of limitations. As described above, the Court has construed Mr. Ash's complaint to raise claims against Defendants under Section 1983. Section 1983 provides a private right of action against any person who, acting under color of state law, causes another person to be subjected to the deprivation of rights under the Constitution or federal law.[4] "Section 1983 does not provide a specific statute of limitations. Thus, courts apply the statute of limitations for personal

---

[3] To the extent that Mr. Ash's opposition can be read to raise claims arising under state law against the Defendants, the Court declines supplemental jurisdiction over those claims so does not discuss every claim that Mr. Ash's complaint could be read to raise under state law.

[4] *See* 42 U.S.C. § 1983 ("Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.").

injury actions under state law. Section 1983 actions filed in New York are therefore subject to a three-year statute of limitations." *Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013) (citing *Owens v. Okure*, 488 U.S. 235, 249-51 (1989); *Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002); N.Y. C.P.L.R. § 214 (McKinney 2013)); *see also Mitchell v. Victoria Home*, 377 F. Supp. 2d 361, 371 (S.D.N.Y. 2005) ("Under New York law, the statute of limitations for § 1983 claims premised on torts such as false arrest or false imprisonment is three years."). "Although the statute of limitations is an affirmative defense, it 'may be raised by a pre-answer motion to dismiss under Rule 12(b)(6), without resort to summary judgment procedure, if the defense appears on the face of the complaint.'" *Ellis v. Wilkinson*, 81 F. Supp. 3d 229, 234 (E.D.N.Y. 2015) (quoting *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998). While "the statute of limitations period is determined by reference to state law, the determination of when a claim accrues is governed by federal law." *Mitchell*, 377 F. Supp. 2d at 371. Thus, the Court applies a three-year statute of limitations to Mr. Ash's Section 1983 claims.

**1. May 16, 2013 Incident**

Because the date on which Mr. Ash alleges that he was falsely arrested is apparent on the face of the complaint, the Court dismisses Mr. Ash's false arrest claim as time barred. "To state a claim for false arrest under New York state law, a plaintiff must show that (1) the defendants intentionally confined the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise justified." *Soto v. City of New York*, 04 CIV.4559 DC, 2005 WL 66893, at *3 (S.D.N.Y. Jan. 11, 2005) (citing *Posr v. Doherty*, 944 F.2d 91, 97 (2d Cir. 1991)).

In the FAC, Mr. Ash alleges that he was arrested on May 16, 2013. FAC at 4. Mr. Ash first filed his complaint in this action on December 9, 2016. *See* Dkt No. 2. In *Ash I*, the Court observed that if—as Defendants argued—the arrest occurred on May 16, 2013, it would surely justify

10

dismissal of this false arrest claim with prejudice." 2018 WL 3462514, at *2 (citing *Case v. Clivilles*, No. 12-cv-8122 (GBD) (MHD), 2013 WL 12325133, at *4 (S.D.N.Y. Aug. 7, 2013) (dismissing false arrest claim that was brought after expiration of three year statute of limitations); *Raul v. Am. Stock Exch.*, No. 95-CV-3154 (SAS), 1996 WL 627574, *2 (S.D.N.Y. Oct. 29, 1996)). However, because the Court could not determine "from the face of the Complaint that the alleged open-container arrest falls outside the applicable limitations period," it declined to dismiss the false arrest claim at that stage of the proceedings. *Id.* Here, the date of the alleged false arrest is stated expressly in the FAC. *See* FAC at 4. Based on that date, the latest that Mr. Ash could have filed his false arrest claim was May 16, 2016. Because Mr. Ash did not file his false arrest claim until December 9, 2016—more than six months after the statute of limitations for this claim had expired—the Court dismisses Mr. Ash's false arrest claim.

Mr. Ash also alleges that he was not arraigned for between twenty and thirty days after his arrest. FAC at 4. The Court construes this as a claim for false imprisonment. "False arrest and false imprisonment are considered synonymous causes of action." *Soto*, 2005 WL 66893, at *3 (citing *Posr*, 944 F.2d at 96). Hence, the elements of false arrest discussed above also apply to Mr. Ash's false imprisonment claim.

This claim is also time-barred. It is immaterial whether the Court considers the cause of action to have accrued when Mr. Ash was allegedly first imprisoned or twenty to thirty days later when he was released because even considering the later date, this claim falls outside the applicable three-year statute of limitations. *See Charlotten v. Heid*, 1:09-CV-0891 LEK/RFT, 2011 WL 3423826, at *4 (N.D.N.Y. Aug. 4, 2011) (concluding that claim for illegal detention under Section 1983 was barred by three-year statute of limitations in New York).

### 2. January 26, 2015 Incident

Mr. Ash's claims for unlawful entry, damage to personal property, religious discrimination,

11

and infliction of emotional distress related to the January 26, 2015 incident are also barred by the statute of limitations. As noted above, Mr. Ash filed his initial complaint in this case on December 9, 2016. *See* Dkt No. 2. Hence, Plaintiff commenced this litigation within the three-year statute of limitations. However, Mr. Ash did not name Defendants Porschar, Jacobson, and Klein—who he now alleges participated in the scheme to have him committed to Bellevue—in connection with the January 26, 2015 incident until he filed the TAC on December 21, 2018, more than ten months after the statute of limitations expired.[5] Thus, the claim is "untimely unless it 'relates back' to one of the pleadings filed before the statute of limitations expired." *Neal v. Wilson*, 239 F. Supp. 3d 755, 759 (S.D.N.Y. 2017) (citing Fed. R. Civ. P. 15(c)).

Although Mr. Ash named "Lieutenant Leary," "Officer McKenzie," "John Doe" and "Jane Doe" as defendants in the SAC and filed that complaint within the limitations period, *see* Dkt No. 8 at 4,[6] this is insufficient to excuse Mr. Ash's failure to name the defendants he now asserts were responsible for the January 25, 2015 incident.[7] The Second Circuit has held that "Rule 15(c) does not allow an amended complaint adding new defendants to relate back if the newly-added defendants were not named originally because the plaintiff did not know their identities." *Barrow v. Wethersfield Police Dep't*, 66 F.3d 466, 470 (2d Cir. 1995); *see also Schiavone v. Fortune*, 477 U.S. 21, 31 (1986) (observing that the "linchpin" of the relation back doctrine "is notice, and notice within the limitations period"); *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 548 (2010) ("Rule 15(c)(1)(C)(ii) asks what the prospective defendant knew or should have known . . . not what the plaintiff knew or should have known at the time of filing her original complaint.").

---

[5] The TAC names Sgt. Lee instead of Sgt. Vasquez as the 7th precinct officer who responded to the incident in the TAC. Mr. Ash replaced Sgt. Lee with Sgt. Vazquez in the FAC. Even assuming that Sgt. Vazquez received adequate notice that he would be named as a defendant based on the TAC, Mr. Ash's claims against him are barred by the statute of limitations.
[6] Mr. Ash's original complaint, Dkt No. 2, named only the "7th Precinct" as a defendant, which Judge Sullivan construed as a claim against the City of New York.
[7] Mr. Ash does not allege that Lt. Leahy (who Mr. Ash apparently believed was named "Lt. Leary" when he filed the SAC) or Officer McKenzie participated in the January 25, 2015 incident.

"Relying on *Barrow,* most federal district courts within the Second Circuit have not allowed the amendment of a complaint to add an individual officer's name after the statute of limitations has run to relate back to the filing of the original complaint naming 'John Doe' as a defendant; instead they rule that Section 1983 claims are time-barred against the newly named defendants." *Dacosta v. City of N.Y.*, 296 F. Supp. 3d 569, 591 (E.D.N.Y. 2017) (citing *Feliciano v. County of Suffolk*, No. CV 04-5321, 2013 WL 1310399 (E.D.N.Y. Mar. 28, 2013); *Felmine v. City of N.Y.*, No. 09-CV-3768, 2012 WL 1999863 (E.D.N.Y. June 4, 2012); *Sherrard v. City of N.Y.*, No. 15-CV-7318, 2016 WL 1574129 (S.D.N.Y. Apr. 15, 2016)).[8] Thus, Mr. Ash's TAC does not relate back to his SAC because he did not name any defendants in connection with the January 26, 2015 incident in the TAC. Accordingly, the claims in the TAC related to the January 26, 2015 incident are untimely, and Mr. Ash's claims for unlawful entry of his home, false arrest and imprisonment, damage to his personal property, and infliction of emotional distress are dismissed.

### 3. Equitable Tolling

Although Mr. Ash does not explicitly argue that he is entitled to equitable tolling, the Court addresses the issue *sua sponte* because Mr. Ash is proceeding *pro se*. "Equitable tolling allows courts to extend the statute of limitations beyond the time of expiration as necessary to avoid inequitable circumstances." *Johnson v. Nyack Hosp.*, 86 F.3d 8, 12 (2d Cir. 1996) (citation omitted). The Second Circuit "has applied the doctrine as a matter of fairness where a plaintiff has been prevented in some

---

[8] There is an exception to this general rule where notice can be imputed to "yet-to-be-named defendant police officers where plaintiff's pleading included 'John Doe' officers from the same incident as [named] defendants in a manner alerting Corporation Counsel that these additional defendants would be named." *Ramos v. Police Officer Maureen Engels*, 15 CV 1081 ARR LB, 2016 WL 3619534, at *4 (E.D.N.Y. June 3, 2016), *report and recommendation adopted sub nom. Ramos v. Engels*, 15-CV-1081 (ARR)(LB), 2016 WL 3640684 (E.D.N.Y. June 29, 2016). Mr. Ash's SAC alleged "that on January 26th or 27th of an unspecified year, 'during the N.Y.C. snow storm,' he had his door 'illegally kicked in by the 7th precinct with no warrant[.]'" *Ash I*, 2018 WL 3462514, at *3 (citation omitted). That allegation is insufficient to bring Mr. Ash within the exception discussed in *Ramos* because Mr. Ash's SAC did not name any defendants in connection with the incident that allegedly occurred on January 26th or 27th; rather, he only identified the "7th precinct," which is not enough to not put the yet-to-be-named defendants on notice. Moreover, Mr. Ash did not specify a year in which the alleged home invasion occurred, making it even less likely that the yet-to-be-named defendants would have received notice of the impending action. Thus, the Court cannot impute notice to Defendants Vazquez, Jacobson, Klein, and Porschar, the defendants who allegedly participated in the unlawful entry.

extraordinary way from exercising his rights, or has asserted his rights in the wrong forum." *Id.* (quotation omitted). "[E]quitable tolling is only appropriate in rare and exceptional circumstances." *Zerilli-Edelglass v. New York City Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003) (brackets and quotation omitted). "When determining whether equitable tolling is applicable, a district court must consider whether the person seeking application of the equitable tolling doctrine (1) has acted with reasonable diligence during the time period she seeks to have tolled, and (2) has proved that the circumstances are so extraordinary that the doctrine should apply." *Id.* at 80-81.

"Equitable tolling is generally considered appropriate where the plaintiff actively pursued judicial remedies but filed a defective pleading during the specified time period; where plaintiff was unaware of his or her cause of action due to misleading conduct of the defendant; or where a plaintiff's medical condition or mental impairment prevented her from proceeding in a timely fashion. *Id.* at 80 (quotation and citations omitted)." "The burden of demonstrating the appropriateness of equitable tolling . . . lies with the plaintiff." *Boos v. Runyon*, 201 F.3d 178, 185 (2d Cir. 2000) (citation omitted).

The information before the Court does not support the conclusion that Mr. Ash suffered from a medical or mental impairment that prevented him from pursuing this action. In his opposition, Mr. Ash claims that he suffers from "fear[,] depression and anxiety" and that he began to visit a psychiatrist because of mental illness that was allegedly caused by Defendants' conduct. Opp. at 5. Mr. Ash also attaches to his opposition an "After Care Letter" from the New York Correctional Health Services Division of Health Care Access and Improvement. *Id.* at 21. This letter diagnoses Mr. Ash with "social phobia" and "adjustment disorder with anxiety" and prescribes medication for these conditions. *Id.*

Mr. Ash is not entitled to equitable tolling based on this diagnosis. A "conclusory and vague claim" of mental illness "without a particularized description of how [a plaintiff's] condition

14

adversely affected her capacity to function generally or in relationship to the pursuit of her rights, is manifestly insufficient to justify any further inquiry into tolling." *Boos*, 201 F.3d at 185. Although the Court understands that Mr. Ash has suffered mental health challenges, the allegations in the TAC and FAC do not meet his burden to show that his diagnoses for "social phobia" and "adjustment disorder with anxiety" prevented him from timely filing a complaint in this case.

The Court will permit Mr. Ash to supplement his opposition to Defendants' motion to dismiss by submitting an affidavit setting forth facts demonstrating that he suffers from a medical condition or mental impairment that prevented him from proceeding in a timely fashion or is otherwise entitled to equitable tolling. Because neither Defendants nor the Court has previously raised the issue of equitable tolling, Mr. Ash has not had "a meaningful opportunity to be heard on the merits of all his tolling arguments." *Abbas v. Dixon*, 480 F.3d 636, 640 n.3 (2d Cir. 2007); *see Lopez v. Nassau County Sheriffs Dep't*, 17CV3722DRHGRB, 2018 WL 3321430, at *5 (E.D.N.Y. July 5, 2018) (permitting a *pro se* litigant to "submit[] an affidavit setting forth facts demonstrating that he acted with reasonable diligence during the time he seeks to have the statute of limitations tolled and demonstrating that the surrounding circumstances are so extraordinary to warrant application of equitable tolling"). Thus, the Court will grant leave to Mr. Ash to file an affidavit providing factual support for an argument that a medical condition or mental impairment was an extraordinary circumstance that prevented him from timely filing a complaint in this case.

**B. Section 1983 Claim for Failure to Investigate**

The Court has construed Mr. Ash's complaint as raising a Section 1983 claim for failure to investigate against Defendant Leahy. *See* TAC at 5 (alleging that "under the request of Lt[.] Leahy[,] no one at the 7th precinct was to take any reports or complaints from [Mr. Ash] pertaining to" Mr. Ash's address); *id.* at 6 (alleging that "[t]he defendants . . . refuse[d] to protect, serve, or take reports on [Mr. Ash's] behalf throughout the 4 years"); Opp. at 2 (Lt[.] Leahy on 3 sep[ar]ate occasions told

15

[Mr. Ash] while being on duty at the 7th precinct . . . that he would not take any criminal rep[or]ts from [Mr. Ash] that pertain[]ed to [Mr. Ash's address].  And at least over 20 times I was told by his subordinates when he wasn[']t working that they were ordered by Lt[.] Leahy not to take any reports that had to do with this same address.).  Thus, the Court has construed Mr. Ash's allegations as raising a claim that officers of the 7th precinct, including Lt. Leahy, failed to investigate claims he brought to their attention.

This claim is not redressable under federal law.  "[T]he Second Circuit has yet to recognize a claim . . . for failure to investigate, and district courts in this circuit have consistently declined to recognize a claim of 'failure to investigate' as a violation . . . giving rise to a damages action[.]"  *Gill v. City of New York*, 15CV5513ARRLB, 2017 WL 1097080, at *6 (E.D.N.Y. Mar. 23, 2017) (quoting *Grega v. Pettengill*, 123 F. Supp. 3d 517, 536 (D. Vt. 2015) (collecting cases)); *see also McCaffrey v. City of New York*, No. 11 Civ. 1636(RJS), 2013 WL 494025, at *5 (S.D.N.Y. Feb. 7, 2013) (Sullivan, J.) ("[A] 'failure to investigate' claim is not independently cognizable as a stand-alone claim[.]"); *Newton v. City of New York*, 566 F. Supp. 2d 256, 278 (S.D.N.Y. 2008) (observing that "there is no constitutional right to an adequate investigation") (citation omitted).  Moreover, "[t]he Second Circuit has rejected . . . a failure to investigate claim [by] victims of alleged crime . . . holding that victims 'do not have a protected property interest in an investigation' into a crime affecting them."  *Gill*, 2017 WL 1097080, at *6 (quoting *Harrington v. County of Suffolk*, 607 F.3d 31, 35 (2d Cir. 2010)).  Because Mr. Ash's claim for failure to investigate is not cognizable under federal law, it is dismissed with prejudice.[9]

---

[9] To the extent that Mr. Ash's complaint can also be construed to raise a claim under Section 1983 for failure to protect, that claim also fails.  "Although '[a]s a general matter . . . a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause,' state actors may be liable under section 1983 if they affirmatively created or enhanced the danger of private violence."  *Okin v. Vill. of Cornwall-on-Hudson Police Dep't*, 577 F.3d 415, 427-28 (2d Cir. 2009) (quoting *Deshaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 197 (1989); other citations omitted).  None of Mr. Ash's allegations support the argument that any of the defendants in this case affirmatively created or enhanced the danger of private violence.

**C. Section 1983 Claim for Religious Discrimination**

The Court has also construed Mr. Ash's complaint as raising a claim for religious discrimination under Section 1983. *See* TAC at 6 (alleging "def[a]mation of character through religious belief"). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citation omitted); *see Ritterband v. Hempstead Union Free Sch. Dist.*, 06CV6628DRHETB, 2008 WL 3887605, at *7 (E.D.N.Y. Aug. 20, 2008) (evaluating a claim for religious discrimination under Section 1983); *Barnes v. Fedele*, 760 F. Supp. 2d 296, 300 (W.D.N.Y. 2011) (construing "claims as brought under § 1983, based on the Free Exercise Clause of the First Amendment"). However, Mr. Ash has failed to allege specific facts that would support a claim for religious discrimination. Mr. Ash's religious discrimination claim is supported only by the conclusory assertion quoted above. Under *Iqbal*, this is insufficient to state a claim. Therefore, the Court also dismisses this claim.[10]

**D. Municipal Liability**

Because the complaint names the City of New York as a defendant, the Court must also address the issue of municipal liability. Under Section 1983, municipalities are "not vicariously liable . . . for their employees' actions." *Connick v. Thompson*, 563 U.S. 51, 60 (2011). Plaintiffs seeking to hold a municipality liable under Section 1983 must plead "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Rodriguez v. Winski*, 973

---

[10] In *Ash I*, the Court dismissed Mr. Ash's defamation claim. 2018 WL 3462514, at *3. In the TAC, Mr. Ash has asserted a claim for "def[a]mation of character." TAC at 6. "Generally, defamation is not actionable under Section 1983." *Emanuele v. Town of Greenville*, 143 F. Supp. 2d 325, 330 (S.D.N.Y. 2001) (citing *Paul v. Davis*, 424 U.S. 693, 701 (1976)). "However, a section 1983 claim may lie when the false and stigmatizing statements, made by the government, are accompanied by a tangible injury to the victim of the statements." *Id.* (citation omitted). "The Second Circuit has interpreted *Paul* 'as holding that "stigma plus" is required to establish a constitutional deprivation.'" *Id.* (quoting *Neu v. Corcoran*, 869 F.2d 662, 667 (2d Cir. 1989)). "A sullied reputation is insufficient for deprivation of a liberty interest." *Id.* (citing *Valmonte v. Bane*, 18 F.3d 992, 1001 (2d Cir. 1994)). "Rather, the plaintiff must also allege the 'plus,' which may be 'significant damage to a person's employment opportunities or dismissal from a government job or deprivation of some other legal right or status.'" *Id.* (quoting *Neu*, 869 F.2d at 667) (brackets omitted). Because Mr. Ash's defamation claim is conclusory and entirely lacking in a factual basis, it cannot meet this pleading standard and the Court dismisses it.

17

F. Supp. 2d 411, 425 (S.D.N.Y. 2013) (quoting *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007)); *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978).

A plaintiff may satisfy the "policy or custom" prong in one of four ways: by alleging the existence of 1) a formal policy, *see Monell*, 436 U.S. at 690; 2) actions taken or decisions made by final municipal policymakers that caused the violation of plaintiff's rights, *see Pembaur v. City of Cincinnati*, 475 U.S. 469, 483-84 (1986); 3) a practice so persistent and widespread that it constitutes a "custom or usage" and implies the constructive knowledge of policymakers, *see Monell*, 436 U.S. at 690-91; or 4) a failure to properly train or supervise municipal employees that amounts to "deliberate indifference to the rights of those with whom municipal employees will come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989); *see also Moray v. City of Yonkers*, 924 F. Supp. 8, 12 (S.D.N.Y. 1996). Furthermore, "it is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the moving force behind the injury alleged." *Bd. of County Comm'rs of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 404 (1997).

Mr. Ash alleges that Lt. Leahy "made it a policy for all officers to ignore and not take any compl[ai]nts from" Mr. Ash. Opp. at 15; *see also id.* at 19 (alleging that "Lt. Leahy as a supervisor created a policy that turned into a traditional c[u]st[o]m under which [Mr. Ash's] constitutional rights were violated"). This allegation is insufficient to support a finding of municipal liability because Lt. Leahy is not a "decisionmaker [who] possesses final authority to establish municipal policy[.]" *Pembaur*, 475 U.S. at 481; *see Vaher v. Town of Orangetown*, 133 F. Supp. 3d 574, 595 (S.D.N.Y. 2015) ("Plaintiff cannot assert municipal liability against the Town under § 1983 based on the status of police officers as policymaking officials.") (quotation omitted).

Moreover, Mr. Ash's naked assertions that Lt. Leahy and other officers mistreated him as a result of a custom or practice is insufficient to meet the pleading standard. *See Iqbal*, 556 U.S. at 678

18

(citing *Twombly*, 550 U.S. at 555); *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995). "The mere assertion . . . that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference." *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993), *overruled on other grounds by Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit,* 507 U.S. 163 (1993); *see also D'Alessandro v. City of New York*, 713 F. App'x 1, 10 (2d Cir. 2017) (granting motion to dismiss where "the complaint merely insists—over and over again, in a conclusory fashion—that a pattern or custom of misconduct existed."). Accordingly, Mr. Ash has failed to state a claim for municipal liability and the claims against the City of New York must be dismissed.

**E. Supplemental Jurisdiction**

The Court declines to exercise supplemental jurisdiction over any state law claims that Mr. Ash's complaint could be read to raise. The Court has discretion to hear such claims pursuant to 28 U.S.C. § 1367(a), which states that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." However, under 28 U.S.C. § 1367(c)(3), the exercise of supplemental jurisdiction over a party's remaining state law claims is within the Court's discretion if it has "dismissed all claims over which it has original jurisdiction." The Second Circuit counsels against exercising supplemental jurisdiction in this circumstance: "'[I]f the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.'" *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 183 (2d Cir. 2004) (quoting *Castellano v. Bd. of Trustees*, 937 F.2d 752, 758 (2d Cir. 1991)).

Accordingly, because the Court has dismissed all of Mr. Ash's claims based on a federal question under 28 U.S.C. § 1331 and there is no other basis for federal jurisdiction over this case, the

19

Court declines to exercise its supplemental jurisdiction over any state law claims that the TAC and FAC may be construed to assert. *See* 28 U.S.C. § 1367(c)(3).

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED. However, the Court will permit Mr. Ash to file an affidavit providing factual support for an argument that the statute of limitations should be equitably tolled with respect to the May 16, 2013 and January 26, 2015 incidents. Any such affidavit must be filed no later than **February 1, 2020**. Because failure to investigate is not a cognizable claim, an amended complaint asserting this claim would be futile and this claim is dismissed with prejudice. However, the Court will grant Mr. Ash leave to replead his religious discrimination and defamation claims. Mr. Ash is reminded that he must allege specific facts to support this. Any such amended complaint must be filed no later than **February 15, 2020**.

The Court requests that Corporation Counsel mail a copy of this order to Mr. Ash and provide Mr. Ash with copies of any unpublished cases cited in this decision pursuant to Local Rule of the United States District Courts for the Southern and Eastern Districts of New York 7.2.

The Clerk of Court is directed to terminate the motion pending at Dkt No. 90.

SO ORDERED.

Dated: January 6, 2020
New York, New York

GREGORY H. WOODS
United States District Judge